**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **ROBERT ELTON,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 06-CV-389-TCK-FHM** |
| | ) | |
| **WALTER DINWIDDIE, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**OPINION AND ORDER**

This is a 28 U.S.C. § 2254 habeas corpus proceeding. Petitioner is a state prisoner appearing *pro se*. Respondent filed a response to the petition (Dkt. # 9), and provided the state court record necessary for resolution of Petitioner's claims (Dkt. ## 9, 10, 11). Petitioner did not file a reply. For the reasons discussed below, the Court finds the petition shall be denied.

***BACKGROUND***

During the early morning hours of October 24, 2002, Petitioner Robert Thomas Elton ("Petitioner"), his brother Robert Lance James Elton ("Lance"), and his friends Runningbear Gibson ("Gibson") and Chris Robedeaux, went to the home of Joe Carralez ("Carralez") and Joshua Jones, to socialize. During the next few hours, the group of young men consumed beer and rum in large quantities. Some time around 2 a.m., Petitioner entered the house armed with a 20 gauge shotgun. He discharged the gun twice. The first shot hit Carralez in the right hand, blowing off his thumb. Carralez went to the bathroom because blood was spurting from his hand. Meanwhile, Lance carried stereo equipment, speakers, and a PlayStation belonging to Carralez out of the house and loaded the equipment into Petitioner's van. After Carralez returned from the bathroom, Petitioner used the gun to force him to the floor and then shot Carralez in the left leg. Petitioner, Lance, and Gibson left the

scene in Petitioner's van. The stereo equipment, speakers, and PlayStation taken from Carralez's house were soon recovered from an apartment where Petitioner's mother stayed. The 20 gauge shotgun was found hidden in the ceiling of the apartment.

As a result of those events, Petitioner was arrested and charged with Robbery With a Firearm (Count 1) and Assault and Battery With a Deadly Weapon (Count 2) in Tulsa County District Court, Case No. CF-2002-5476. Lance and Gibson were also charged with Robbery With a Firearm (Count 1). Lance was additionally charged with Receiving/Concealing Stolen Property (Count 3).[1] On May 6, 2003, Petitioner's attorney filed an application for determination of competency. By letter dated June 17, 2003, Dr. William L. Cooper reported his conclusion that Petitioner was not competent to stand trial. Petitioner requested a jury trial on the issue of competency. On July 8, 2003, a jury heard the evidence and found Petitioner to be not incompetent. Thereafter, on October 13-16, 2003, Petitioner was tried by a jury. As to Count 1, the jury returned a verdict of guilty and recommended a sentence of fifty (50) years imprisonment. As to Count 2, the jury found Petitioner guilty of the lesser included offense of Assault and Battery With a Dangerous Weapon and recommended a sentence of ten (10) years imprisonment. On December 8, 2003, the trial court judge sentenced Petitioner in accordance with the jury's recommendation and ordered the sentences to be served consecutively. Petitioner was represented during his criminal proceedings by attorney Richard Couch.

---

[1]     According to the docket sheet for Case No. CF-2002-5476, Lance was convicted on his pleas of guilty of Larceny From House (Count 1) and Receiving/Concealing Stolen Property (Count 3). He was sentenced to four (4) years imprisonment, suspended, on each count. The charge against Runningbear Gibson was dismissed. See www.oscn.net.

Petitioner perfected a direct appeal in the Oklahoma Court of Criminal Appeals ("OCCA").

Represented by attorney Stephen Greubel, he raised the following propositions of error:

1. The jury should not have been instructed on the lesser offense of Assault and Battery With a Dangerous Weapon over Appellant Elton's objection.

2. Appellant Elton's multiple convictions violate Okla. Stat. tit. 21, § 11.

3. The trial court's erroneous belief that it could not instruct on parole ineligibility, and its refusal to do so in light of that erroneous belief, requires reversal.

4. Under the facts and circumstances of this particular case, the imposition of sixty years imprisonment does not serve the ends of justice.

5. Prosecutorial misconduct warrants reversal or sentence reduction.

6. The court erred in failing to instruct on impeachment by prior inconsistent statements.

See Dkt. # 9, Ex. 1. Petitioner also filed a *pro se* supplemental brief, raising one additional proposition of error as follows:

7. Prosecutorial misconduct -- failure to disclose evidence constitutes reversible error.

See Dkt. # 9, Exs. 9 and 18. In an unpublished summary opinion filed March 2, 2005, in Case No. F-2003-1335 (Dkt. # 9, Ex. 3), the OCCA rejected all seven (7) claims and affirmed the Judgment and Sentence of the trial court.

On December 15, 2005, Petitioner filed an application for post-conviction relief in the state district court. See Dkt. # 9, Ex. 4. Appearing *pro se*, Petitioner raised nine (9) grounds of error:

Ground 1:  Statements obtained in violation of Miranda v. Arizona/5th Amendment right to protection from self-incrimination/fruits derived from illegally obtained statements used to infringe upon Petitioner's due process/counsel ineffective.

Ground 2:  Incompetence to stand trial in violation of Petitioner's right to due process as guaranteed by the U.S. Constitution Amendments 5, 14, Petitioner was tried without sufficient ability to consult with a lawyer with reasonable degree . . . or assist in his defense.

3

Ground 3:      Petitioner convicted by jury not accurately representative of fair cross-section of racially diverse community requirement.

Ground 4:      Vagueness of statute/indictment/verdict forms give uncontrolled discretion for arbitrary enforcement of the law leading to errors of constitutional dimension not harmless beyond a reasonable doubt; court interference with sentencing jury.

Ground 5:      Self-representation right denied post-denial of requested reappointment of counsel; post-trial motion for new trial denied solely based on "pro se" submission . . . discriminatory.

Ground 6:      Appellate counsel ineffectiveness.  Improperly raised claims, improperly litigated issues on appeal in violation of 6th Amendment right to effective assistance of counsel.

Ground 7:      Disproportionate sentence: unconstitutional statute Title 21 O.S. 801 violates Petitioner's right to be free from cruel and unusual punishment as guaranteed by U.S. Constitution Amendments 5, 8, 14.  Petitioner was arbitrarily sentenced to 60 years @ 85% mandatory service without prior felony convictions/offenses.

Ground 8:      Error of constitutional dimension when P.S.I. based on erroneous information; presentence investigation report for first felony creates liberty interest, as possible sentence reduction is dependent upon defendant's conduct prior to conviction and the result of recommendation derived from erroneously based report, violating Petitioner's right to due process as protected by Amendments 5 and 14 of the United States Constitution, and 6th Amendment right to adequate counsel at sentencing proceedings.

Ground 9:      6th Amendment right to effective assistance of counsel denied pretrial, trial, and further at sentencing and appeal.

See Dkt. # 9, Ex. 4.  That application was denied on February 3, 2006 (Dkt. # 9, Ex. 6).  Petitioner appealed. By order filed June 9, 2006, in Case No. PC-2006-218 (Dkt. # 9, Ex. 7), the OCCA affirmed the district court's denial of post-conviction relief.

On July 26, 2006, Petitioner filed his federal petition for writ of habeas corpus (Dkt. # 1). Petitioner raises three (3) grounds for relief, as follows:

4

Ground 1:     Elton's convictions are violative of Oklahoma's prohibition against double jeopardy and double punishment, and the State of Oklahoma is barred by doctrines of res judicata and/or estopped from arguments inconsistent with preliminary hearing position, requesting charge of intent to kill.

Ground 2:     Mr. Elton did not receive reasonably competent counsel – trial counsel's failure to communicate effectively with Petitioner Elton or communicate with the district court, request a neurological evaluation or inform the court of mitigating circumstances are evidence that Elton's counsel's independent decisions to withhold such communication is strictly ineffective and does not serve any strategic purpose, falling below an objective standard of reasonableness.

Ground 3:     Disproportionate sentence – sentence violative of the Petitioner's Eighth Amendment right to be free from cruel and unusual punishment/statute contrary to Apprendi v. New Jersey.

See Dkt. # 1. In response to the petition, Respondent asserts that Petitioner's claims are not cognizable in these proceedings, or do not justify relief under 28 U.S.C. § 2254(d), or are procedurally barred. See Dkt. # 9.

### *ANALYSIS*

**A.**    **Exhaustion/Evidentiary Hearing**

Before addressing the claims raised in the petition, the Court must determine whether Petitioner meets the exhaustion requirement of 28 U.S.C. § 2254(b) and (c). See Rose v. Lundy, 455 U.S. 509, 510 (1982). As discussed in more detail below, Petitioner's double jeopardy claim has not been fairly presented to the OCCA and is technically unexhausted. In light of the procedural posture of this case, however, the Court finds it would be futile to require Petitioner to return to state court because his unexhausted claim would undoubtedly be subject to a procedural bar independent and adequate to prevent habeas corpus review. Therefore, there is no available state corrective process, and consideration of the claim is not precluded by the exhaustion requirement of § 2254(b).

Petitioner's remaining claims were fairly presented to the OCCA on either direct or post-conviction appeal.  Therefore, the exhaustion requirement is satisfied in this case.

In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing.  See Michael Williams v. Taylor, 529 U.S. 420 (2000).

## B.      Claims adjudicated by the OCCA

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions.  Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001).  When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner.  See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002).  Furthermore, the "determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  In this case, the OCCA adjudicated Petitioner's double punishment and instructional error claims, both asserted in his first ground of error, and his third ground for relief on direct appeal. In addition, the OCCA adjudicated Petitioner's claim of

ineffective assistance of appellate counsel on post-conviction appeal.  Therefore, to the extent those claims are cognizable, they  shall be reviewed pursuant to § 2254(d).

### 1.  Double Jeopardy/Double Punishment (part of ground 1)

In his first ground of error, Petitioner alleges that because the "facts of the case support one continual course of conduct," his convictions for both Robbery With a Firearm and Assault and Battery With a Dangerous Weapon violate the State of Oklahoma's prohibition against double jeopardy and double punishment.  On direct appeal, Petitioner cited Okla. Stat. tit. 21, § 11.  See Dkt. # 9, Ex. 1.  The OCCA rejected the claim, citing Davis v. State, 916 P.2d 251, 261 (Okla. Crim. App. 1996), and Hale v. State, 888 P.2d 1027, 1028 (Okla. Crim. App. 1985), and finding that "Appellant's two convictions, while occurring in close proximity to one another, were separate and distinct and do not violate 21. O.S.2001, § 11." See Dkt. # 9, Ex. 3.

First, the Court finds Petitioner's claim that he has suffered multiple punishments in violation of Oklahoma statutory law should be denied because it is not cognizable on federal habeas corpus review.  A federal habeas court has no authority to review a state court's interpretation or application of its own state laws.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (emphasizing that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions). Instead, when conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.  Id.; 28 U.S.C. §§ 2254(a). Petitioner's multiple punishment claim, insofar as it is based on an Oklahoma statute, is not cognizable in this federal habeas corpus proceeding and shall be denied on that basis.

Nor is Petitioner entitled to relief on his double jeopardy claim. The Court notes that Petitioner did not raise a federal double jeopardy claim in either his direct appeal or in his post-

conviction proceeding.[2]  As a result, the claim is unexhausted.  Nonetheless, a request for habeas corpus relief may be denied on the merits, notwithstanding a petitioner's failure to exhaust state remedies. 28 U.S.C. § 2254(b)(2). In this case, Petitioner's double jeopardy claim lacks merit and shall be denied.  The Double Jeopardy Clause protects against multiple punishments for the same offense.  North Carolina v. Pearce, 395 U.S. 711, 717 (1969), *overruled on other grounds by* Alabama v. Smith, 490 U.S. 794 (1989).  This protection is limited to ensuring "that the sentencing discretion of courts is confined to the limits established by the legislature," for it is the legislature that is vested with "the substantive power to prescribe crimes and determine punishments." Ohio v. Johnson, 467 U.S. 493, 499 (1984).  Thus, when a course of criminal conduct violates two statutory provisions, the test to determine whether the punishments are "multiple," in violation of the Double Jeopardy Clause, is "essentially one of legislative intent."  Id.; see also Missouri v. Hunter, 459 U.S. 359, 365 (1983). In the absence of clear legislative intent, courts must apply the Blockburger test, which states that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304 (1932).

Although each of Petitioner's convictions resulted from a series of acts committed by Petitioner, they are not violative of the Double Jeopardy Clause as events resulting from a single criminal episode, as argued by Petitioner.  The crimes of Robbery With a Firearm and Assault and Battery With a Dangerous Weapon are separate crimes under Oklahoma law. They require proof of

---

[2]    In ground 6 of his application for post-conviction relief, Petitioner raised a claim of ineffective assistance of appellate counsel based on the assertion that a double jeopardy claim was inadequately raised on direct appeal.  See Dkt. # 9, Ex. 4.

distinct facts and elements, even though some of the facts supporting each crime may overlap.  See Brown v. Ohio, 432 U.S. 161, 166 (1977) (holding that "[i]f each requires proof of a fact that the other does not, the Blockburger test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes").  Therefore, Petitioner's convictions on the two crimes did not violate the constitutional prohibition against double jeopardy.  Petitioner's request for habeas corpus relief shall be denied.  28 U.S.C. § 2254(b)(2).

### 2.  Instructional error (part of ground 1)

In his first ground of error, Petitioner also complains that the trial court judge, over his objection, gave the jury an instruction on Assault and Battery With a Dangerous Weapon, a lesser included offense of the crime charged, Assault and Battery With a Deadly Weapon.  Petitioner maintains that pursuant to the doctrines of res judicata and collateral estoppel, the State is bound by the theory of the case presented at the preliminary hearing.  On direct appeal, the OCCA cited Shrum v. State, 991 P.2d 1032, 1036-37 (Okla. Crim. App. 1999), and found that "the trial court did not abuse its discretion in instructing the jury on assault and battery with a dangerous weapon."  See Dkt. # 9, Ex. 3.  The OCCA also stated that Petitioner "had adequate notice to defend the assault and battery with a dangerous weapon charge."  Id.

The Court finds that Petitioner is not entitled to habeas relief on his claim challenging the trial court's issuance of a lesser included offense instruction.  "[F]ederal habeas review does not extend to the correction of purely state law procedural errors that do not rise to the level of a constitutional due process violation." Shipley v. Oklahoma, 313 F.3d 1249, 1251 (10th Cir. 2002). The trial court's decision to issue a lesser included offense instruction was based on state law. The OCCA has interpreted state law to hold that while a defendant is free to adopt an "all or nothing"

strategy with regard to any lesser-offense alternatives, the trial court is not bound by that strategy, and may instruct *sua sponte* on any lesser-related offense it believes to be supported by the evidence, without any formal request by the State.  McHam v. State, 126 P.3d 662, 670 (Okla. Crim. App. 2005) (clarifying holding of Shrum).  In this case, the evidence supported the lesser included offense and Petitioner has failed to demonstrate that he was unfairly surprised by the instruction.  The issuance of the instruction did not rise to the level of a constitutional due process violation.  Therefore, Petitioner is not entitled to habeas corpus relief on this claim.

### 3.  Ineffective assistance of appellate counsel (part of ground 2)

As part of ground two, Petitioner claims he received ineffective assistance of appellate counsel.  Specifically, he claims that appellate counsel was constitutionally ineffective for failing to raise the following ineffective assistance of trial counsel claims on direct appeal: (1) that trial counsel failed to communicate mitigating circumstances to the court, (2) that trial counsel failed to request a neurological evaluation, and (3) that trial counsel worked under a conflict of interest.  He also claims that he is entitled to an evidentiary hearing.  See Dkt. #1. The OCCA rejected Petitioner's claim of ineffective assistance of appellate counsel on post-conviction appeal, finding that Petitioner did not establish his counsel's performance was deficient under the standards enunciated in Strickland v. Washington, 466 U.S. 668 (1984). See Dkt. # 9, Ex. 7 at 2.  The OCCA ruled as follows:

> As a reason for not previously asserting his current propositions of error, Petitioner claims his appellate counsel was ineffective.  To support a claim of ineffective appellate counsel, Petitioner must establish counsel's performance was deficient under prevailing professional norms and that but for the deficient performance the outcome of his trial and appeal would have been different, or he must establish factual innocence. *Strickland v. Washington*, 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674, 693, 698. Petitioner has not established that his appellate counsel's performance was deficient under prevailing professional

norms.  *Id.*  He has not established that the results of his jury's verdict would have or should have been different, or that the result of his trial and appeal were unreliable or fundamentally unfair.  *Id.*  He has not established that he is factually innocent.  *Id.*  Therefore, the order of the District Court of Tulsa County denying Petitioner's application for post-conviction relief in Case No. CF-2002-5476 should be, and is hereby, **AFFIRMED**.

Id.

Petitioner is not entitled to habeas corpus relief on his claim of ineffective assistance of appellate counsel unless he demonstrates that the OCCA's adjudication was an unreasonable application of Supreme Court law.  In evaluating a claim of ineffective assistance of appellate counsel, this Court applies the Strickland two-pronged standard used for general claims of ineffective assistance of trial counsel. See United States v. Cook, 45 F.3d 388, 392 (10th Cir. 1995). To establish ineffective assistance of counsel under Strickland, a petitioner must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland, 466 U.S. at 687; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A petitioner can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases.  Strickland, 466 U.S. at 687-88.  There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688.  In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."  Id. at 689.  To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999).

When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on direct appeal, the Court first examines the merits of the omitted issue. Hawkins v. Hannigan, 185 F.3d 1146, 1152 (10th Cir. 1999). If the omitted issue is meritless, then counsel's failure to raise it does not amount to constitutionally ineffective assistance. Id.; see also Parker v. Champion, 148 F.3d 1219, 1221 (10th Cir. 1998) (citing Cook, 45 F.3d at 392-93). If the issue has merit, the Court then must determine whether counsel's failure to raise the claim on direct appeal was deficient and prejudicial.  Hawkins, 185 F.3d at 1152; see also Cook, 45 F.3d at 394. More particularly, "the relevant questions are whether appellate counsel was 'objectively unreasonable' in failing to raise these . . . claims on direct appeal and, if so, whether there is a 'reasonable probability that, but for his counsel's unreasonable failure' to raise these claims, [Petitioner] 'would have prevailed on his appeal.'" Neill v. Gibson, 278 F.3d 1044, 1057 (10th Cir. 2001) (quoting Smith v. Robbins, 528 U.S. 259, 285-86 (2000)).

### a) *Failure to communicate mitigating circumstances to the trial court*

Petitioner first argues that his appellate attorney provided ineffective assistance when he omitted a claim that Petitioner's trial counsel failed to communicate "mitigating circumstances" to the trial court.  In support of this claim concerning trial counsel's representation, Petitioner states that:

> While Elton does not argue that his appointed defender did or did not enjoy typing motions, Elton is arguing that the appointed defender failed to communicate to the court mitigating circumstances and therefore, the jury were not privy to the mitigating information, which clearly [would] have had a more reasonable effect as

12

> to the sentencing phase of the trial, if not altogether changed the verdict (vis a vis "insanity") or incompetent to be tried at all.  Though none of these due process responsibilities were applied, jurors did not weigh the mitigating circumstances with the other evidence and so their own reasonings were skewed.

(Dkt. # 1).

To the extent Petitioner faults his attorney for failing to present "mitigating circumstances" in the form of evidence of incompetence or insanity during trial, the Court finds he has failed to satisfy the deficient performance prong of the <u>Strickland</u> standard. As a preliminary matter, under Oklahoma law, a defendant's competence to stand trial and sanity at the time of the offense are separate and distinct issues.  <u>See</u>, <u>e.g.</u>, <u>Ellis v. State</u>, 867 P.2d 1289, 1296-97 (Okla. Crim. App. 1992). While the question of Petitioner's competence to stand trial was resolved by a jury prior to his trial on the criminal charges, there is nothing in the record to suggest that Petitioner's sanity at the time of the offense was ever an issue.  Furthermore, Petitioner has presented no evidence in this habeas action suggesting that there was a basis for the assertion of an insanity defense.  After a jury found Petitioner to be not incompetent, Petitioner's trial counsel pursued defenses of self-defense and defense of others at trial. Petitioner has failed to demonstrate that counsel's strategy was unsound. Petitioner testified in his own defense and admitted that he shot Carralez in the leg, but claimed Carralez was armed with a gun and that he shot Carralez in the leg because he feared for his life. <u>See</u> Tr. Trans. at 491. Thus, Petitioner's testimony aligned with his defense of self-defense. Petitioner has not demonstrated that trial counsel performed deficiently in failing to present evidence of incompetence or insanity at trial.

To the extent Petitioner faults his attorney for failing to present mitigation evidence at sentencing, the Tenth Circuit has noted that a petitioner's Eighth Amendment or due process or equal protection rights are not violated when a trial court does not consider mitigating factors during

sentencing in a noncapital case. <u>Scrivner v. Tansy</u>, 68 F.3d 1234, 1240 (10th Cir. 1995) (citing

<u>United States v. LaFleur</u>, 971 F.2d 200, 211-12 (9th Cir. 1991)). This was a noncapital case. Thus,

Petitioner's trial counsel did not perform deficiently in failing to present mitigation evidence at

sentencing.

Having found that trial counsel's performance was not deficient for the omissions identified

by Petitioner, this Court cannot find appellate counsel was ineffective for failing to raise a non-

meritorious claim of ineffective assistance of counsel.  Petitioner is not entitled to habeas corpus

relief on this ground.

### b) *Failure to request a neurological examination*

Petitioner next contends that his appellate counsel should have raised an ineffective

assistance of trial counsel claim for failing to request a neurological examination.  In support of this

claim, Petitioner alleges that:

> A mental health evaluation would have aided the judge in her final sentence and also
> have the more favorable effect of ensuring the goals of society – as to (a more
> realistic course of offender treatment and or) appropriate medical care based on the
> actions within the criminal offense, rather than cruelly incarcerate Elton (or any other
> first-time offender with such resolute life sentence, which Elton (or anyone else)
> could ever achieve, or even hope to earn his freedom back – in some form – due to
> the statutory restrictions placed on Robbery offenders since 2001 . . . .

(Dkt. # 1).

In this habeas corpus action, Petitioner maintains that he was incompetent to stand trial.  At

the time of trial, however, Petitioner maintained that he was competent.  During pretrial proceedings,

Petitioner's attorney, Rick Couch, recognized that Petitioner had trust issues and expressed concern

that letters written by Petitioner to the trial court and the district attorney contained potentially

damaging information reflecting a lack of understanding of the seriousness of the charges filed

against him. See Dkt. # 9, Ex. 11. The record also reflects that, contrary to Petitioner's allegation, attorney Couch did in fact request that Petitioner be examined by a second mental health expert, at the State's expense. See Dkt. # 9, Ex. 13 at 6. However, the trial court denied the request because the State had already paid for a mental health evaluation by Dr. William L. Cooper. Id. at 7. Significantly, the record before the Court reflects that the trial court judge, Hon. Rebecca Brett Nightingale, was well aware of Petitioner's mental health issues.  See Dkt. # 9, Exs. 11, 12, 13, 15. The Court finds because trial counsel did in fact request a second mental health evaluation, there is no factual basis for Petitioner's claim of ineffective assistance of trial counsel based on counsel's alleged failure to request a mental health evaluation.  As a result, Petitioner's claim of ineffective assistance of trial counsel lacks merit and appellate counsel did not perform deficiently in failing to raise the claim on direct appeal.  Petitioner is not entitled to habeas corpus relief on this claim.

### c)  *Trial counsel's conflict of interest*

Petitioner next complains that appellate counsel provided ineffective assistance in failing to raise on direct appeal that trial counsel worked under a conflict of interest.  He provides no statement of fact in support of this claim. See Dkt. # 1. As part of his application for post-conviction relief, however, Petitioner provided "Exhibit B," a summary of the record demonstrating his dissatisfaction with his court-appointed counsel.  See Dkt. # 9, Ex. 4. To the extent the conflict of interest identified by Petitioner is based on the evidence cited in "Exhibit B" and Petitioner's generalized allegation that his trial counsel failed to communicate with him and the trial court, the Court finds Petitioner has failed to demonstrate that appellate counsel provided ineffective assistance in failing to raise a claim based on the existence of trial counsel's alleged conflict of interest.

To establish the existence of a conflict of interest, a petitioner must demonstrate that counsel "actively represented conflicting interests" in the pending case. See United States v. Soto Hernandez, 849 F.2d 1325, 1329 (10th Cir. 1988). Nothing in the record in this case suggests that Petitioner's counsel "actively represented conflicting interests." However, the Tenth Circuit has also recognized that "a complete breakdown in communication between an attorney and client may give rise to a presumption of ineffectiveness." Hale v. Gibson, 227 F.3d 1298, 1313 (10th Cir. 2000) (citing Romero v. Furlong, 215 F.3d 1107, 1111 (10th Cir. 2000)); Soto Hernandez, 849 F.2d at 1328. "To prove a total breakdown in communication, a defendant must put forth evidence of a severe and pervasive conflict with his attorney or evidence that he had such minimal contact with the attorney that meaningful communication was not possible." United States v. Lott, 310 F.3d 1231, 1249 (10th Cir. 2002). If a defendant can demonstrate that there was "[a] complete breakdown in communication" between himself and his attorney, a presumption of ineffectiveness will arise, making it unnecessary for the defendant to satisfy the two-pronged Strickland test. United States v. Cronic, 466 U.S. 648, 658 (1984). In determining whether a purported breakdown in the attorney-client relationship has rendered a defendant's representation constitutionally deficient, a court considers several elements, including the following: (1) whether the defendant made a timely motion requesting new counsel; (2) whether the court adequately inquired into the matter; (3) whether the conflict between the defendant and his attorney was "so great that it resulted in a total lack of communication preventing an adequate defense"; and (4) whether the defendant substantially and unjustifiably contributed to the breakdown in communication. Romero, 215 F.3d at 1113.

To the extent Petitioner's conflict of interest claim is premised on a complete breakdown in communication, the Court finds he has failed to demonstrate entitlement to habeas corpus relief.

Only the first <u>Romero</u> factor favors Petitioner: the record before the Court demonstrates that Petitioner made several timely requests for new counsel. <u>See</u> Dkt. # 9, Ex. 14, docket entries at pages 14, 15, 16. Each request was denied. As to the second <u>Romero</u> factor, the record reflects that prior to the jury trial on competency, the trial court inquired as to the basis of Petitioner's dissatisfaction with Mr. Couch's representation. <u>See</u> Dkt. # 9, Ex. 13 at 3-5. Petitioner explained that he believed a conflict existed because Mr. Couch had filed an application for determination of competency when Petitioner believed himself to be competent. The trial court judge explained to Petitioner that counsel had never taken the position that Petitioner was incompetent and had always advocated Petitioner's position that he was competent. <u>Id.</u> at 4. The trial court further inquired concerning the extent of communication between Petitioner and Mr. Couch. <u>Id.</u> at 5. After making the inquiry, the trial court denied Petitioner's motion to allow Mr. Couch to withdraw. <u>Id.</u> at 6. Mr. Couch then requested appointment of a second mental health expert, at the State's expense, for the purpose of evaluating Petitioner. <u>Id.</u> That request was denied. <u>Id.</u> at 7. As to the third factor for consideration, the Court finds nothing in the record suggests a total lack of communication between Petitioner and Mr. Couch preventing an adequate defense. The trial record reflects that Mr. Couch worked to present Petitioner's defenses to the jury. Many of the complaints identified by Petitioner in "Exhibit B" attached to his application for post-conviction relief reflect dissatisfaction with strategic decisions made by trial counsel. As to the fourth <u>Romero</u> factor, the record reflects that Petitioner's complaints about his attorney's performance may have been based upon his lack of understanding of court procedures and misunderstanding of actions taken by counsel. Thus, Petitioner substantially and unjustifiably contributed to the breakdown in communication between himself and Mr. Couch by making unreasonable demands and unfounded criticisms of Mr. Couch's

efforts.  Upon review of the record, the Court finds no merit to Petitioner's allegation of a complete communication breakdown between himself and trial counsel.

In summary, Petitioner has failed to demonstrate that the OCCA's adjudication of his ineffective assistance of appellate counsel claim was contrary to or an unreasonable application of Supreme Court law.  Therefore, Petitioner is not entitled to habeas corpus relief on this claim.  28 U.S.C. § 2254(d).

### 4.  Excessive sentence resulting from failure to instruct on "85% Rule" (ground 3)

As his third proposition of error, Petitioner complains that his sentence is disproportionate as a result of the trial court's refusal to instruct on Oklahoma's "85% Rule."  <u>See</u> Dkt. # 1.  The OCCA rejected this claim on direct appeal, citing <u>Mayes v. State</u>, 887 P.2d 1288, 1316 (Okla. Crim. App. 1994); <u>Ellis v. State</u>, 749 P.2d 114, 116 (Okla. Crim. App. 1988); and <u>Miller v. State</u>, 522 P.2d 642, 644 (Okla. Crim. App. 1974), and finding that "the trial court did not err in refusing Appellant's request for a jury instruction that he would have to serve 85% of his sentence before becoming eligible for parole."  <u>See</u> Dkt. # 9, Ex. 3.

Under Oklahoma's 85 percent rule, "[p]ersons convicted of: . . . [r]obbery with a dangerous weapon as defined in Section 801 of this title . . . shall be required to serve not less than eighty-five percent (85%) of any sentence of imprisonment imposed by the judicial system prior to becoming eligible for consideration for parole." Okla. Stat. tit. 21, § 13.1 (2002).  In 2006, after Petitioner was convicted and sentenced, the OCCA held that trial courts should instruct jurors on the 85 percent rule prior to sentencing. <u>Anderson v. State</u>, 130 P.3d 273, 283 (Okla. Crim. App. 2006).  The <u>Anderson</u> court, however, specified that its holding was prospective and did not apply to "cases before this decision." <u>Id.</u>

The United States Supreme Court has not held that the Constitution requires the jury to be informed of a defendant's parole eligibility in a non-capital case. Indeed, the Court has only held that the Constitution requires such information to be provided to a jury in a limited set of capital cases. See, e.g., Simmons v. South Carolina, 512 U.S. 154 (1994) (holding, in a capital case, that the jury must be informed of parole eligibility when: (1) the defendant, if sentenced to life, will never become legally eligible for parole; and (2) the prosecution argues that the defendant presents a future danger). In light of this precedent, Petitioner has failed to demonstrate constitutional error. 28 U.S.C. § 2254(a). The trial court's failure to instruct on the 85 percent rule did not render Petitioner's trial fundamentally unfair in a constitutional sense. See Taylor v. Parker, 276 Fed.Appx. 772, 775-76 (10th Cir. 2008) (unpublished) (in a non-capital case, rejecting petitioner's contention that he was entitled to habeas relief because the trial court failed to instruct the jury on Oklahoma's 85 percent rule).

Petitioner also alleges a violation of the Eighth Amendment's prohibition on cruel and unusual punishment as a basis for this claim. The Court finds, however, that Petitioner is not entitled to relief because his sentence is not grossly disproportionate to the crimes for which he was convicted: Robbery With a Firearm and Assault and Battery With a Dangerous Weapon. See Hawkins v. Hargett, 200 F.3d 1279, 1282 (10th Cir. 1999); see also Rummel v. Estelle, 445 U.S. 263 (1980). The length of Petitioner's sentence cannot be said to be unreasonable in light of the deferential standard that binds this Court's analysis. See Lockyer v. Andrade, 538 U.S. 63, 72-73 (2003) (observing numerous impediments to challenging the length of a prison sentence under federal habeas review). A sentence violates the Eighth Amendment only if it is "grossly disproportionate to the severity of the crime." Ewing v. California, 538 U.S. 11, 21 (2003) (quoting

19

Rummel, 445 U.S. at 271).  But "[t]he gross disproportionality principle reserves a constitutional

violation for only the extraordinary case." Lockyer, 538 U.S. at 77. This is not that case. Petitioner

is not entitled to habeas corpus relief based on his claim that his sentence is constitutionally

excessive. Petitioner's request for habeas corpus relief on this ground shall be denied.

**C.  Procedural bar (part of ground 2)**

The record confirms that Petitioner's claims of ineffective assistance of trial counsel

identified in ground 2 were not presented to the OCCA on direct appeal. These claims were raised

for the first time in Petitioner's application for post-conviction relief. In its order affirming the

district court's denial of post-conviction relief, the OCCA stated:

> Petitioner has failed to establish entitlement to relief in this post-conviction
> proceeding.  Petitioner reasserts several propositions of error presented to the District
> Court, but he has not established the District Court erred or abused its discretion.
> With one exception [the claim of ineffective assistance of appellate counsel], all of
> the propositions of error either were or could have been raised during his trial or in
> his direct appeal. All issues that could have and should have been raised in a direct
> appeal are waived and may not be the basis of a post-conviction application.  22
> O.S.2001, § 1086; *Fowler v. State*, 1995 OK CR 29, ¶ 2, 896 P.2d 566, 569.

Dkt. # 991, Ex. 7.  Thus, the OCCA found that Petitioner had defaulted his claims of ineffective

assistance of trial counsel and, for that reason, did not adjudicate the claims on the merits.

The doctrine of procedural default prohibits a federal court from considering a specific

habeas claim where the state's highest court declined to reach the merits of that claim on

independent and adequate state procedural grounds, unless petitioner can "demonstrate cause for the

default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that

failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman v.

Thompson, 501 U.S. 722, 724 (1991); see also Maes v. Thomas, 46 F.3d 979, 985 (10th Cir. 1995);

Gilbert v. Scott, 941 F.2d 1065, 1067-68 (10th Cir. 1991).  "A state court finding of procedural

20

default is independent if it is separate and distinct from federal law." Maes, 46 F.3d at 985.  A finding of procedural default is an adequate state ground if it has been applied evenhandedly "'in the vast majority of cases.'"  Id. (quoting Andrews v. Deland, 943 F.2d 1162, 1190 (10th Cir. 1991)). The Tenth Circuit has recognized that "Oklahoma's procedural rule barring post-conviction relief for claims petitioner could have raised on direct appeal constitutes an independent and adequate ground" barring federal habeas corpus review. Sherrill v. Hargett, 184 F.3d 1172, 1175 (10th Cir. 1999).

Applying the principles of procedural bar to this case, the Court concludes that Petitioner's claims of ineffective assistance of trial counsel as asserted in ground 2 are procedurally barred. The OCCA's procedural bar, based on Petitioner's failure to raise these grounds on direct appeal, is an "independent" state ground because state law provided "the exclusive basis for the state court's holding." Maes, 46 F.3d at 985.  As to the adequacy of the procedural bar imposed on Petitioner's claims of ineffective assistance of trial counsel, the Tenth Circuit Court of Appeals has recognized that countervailing concerns may justify an exception to the general rule of procedural default. Brecheen v. Reynolds, 41 F.3d 1343, 1363 (10th Cir. 1994) (citing Kimmelman v. Morrison, 477 U.S. 365 (1986)).  The unique concerns are "dictated by the interplay of two factors: the need for additional fact-finding, along with the need to permit the petitioner to consult with separate counsel on appeal in order to obtain an objective assessment as to trial counsel's performance." Id. at 1364 (citing Osborn v. Shillinger, 861 F.2d 612, 623 (10th Cir. 1988)).  In English v. Cody, 146 F.3d 1257 (10th Cir. 1998), the Tenth Circuit held that "the Oklahoma bar will apply in those limited cases meeting the following two conditions: trial and appellate counsel differ; and the ineffectiveness claim can be resolved upon the trial record alone.  All other ineffectiveness claims are procedurally

barred only if Oklahoma's special appellate remand rule for ineffectiveness claims is adequately and evenhandedly applied." Id. at 1264 (citation omitted).

After reviewing the record in this case in light of the factors identified in English, the Court finds that the procedural bar imposed by the state courts on Petitioner's ground 2 ineffective assistance of trial counsel claims is based on grounds adequate to preclude federal habeas review. Petitioner was represented at trial by attorney Rick Couch. On direct appeal, Petitioner was represented by attorney Stephen J. Greubel. For purposes of the first requirement identified in English, the Court finds that Petitioner had the opportunity to confer with separate counsel during trial proceedings and on direct appeal.

The second English factor requires that the claim could have been resolved either "upon the trial record alone" or after adequately developing a factual record through some other procedural mechanism. Id. at 1263-64. In applying a procedural bar to Petitioner's claims of ineffective assistance of trial counsel, the OCCA specifically determined that the claims could have been but was not raised on direct appeal. See Dkt. # 9, Ex. 7. Each of Petitioner's defaulted claims, including his allegation that trial counsel failed to communicate resulting in a "conflict of interest," could be resolved based on the trial record alone. Furthermore, even if his defaulted claims could not all be resolved on the record alone, Petitioner has not alleged that the Oklahoma remand procedure provided by Rule 3.11, *Rules of the Oklahoma Court of Criminal Appeals*, was inadequate to allow him to supplement the record on his ineffective assistance of counsel claims. See Hooks v. Ward, 184 F.3d 1206, 1217 (10th Cir. 1999) (once the state pleads the affirmative defense of an independent and adequate state procedural bar, the burden shifts to the petitioner to make specific allegations as to the inadequacy of the state procedure). Although Respondent alleged an

independent and adequate procedural bar, see Dkt. # 9 at 6-15, Petitioner failed to file a reply to

Respondent's response and has not otherwise specifically put the adequacy of Oklahoma's remand

procedure at issue. See Dkt. # 1. As a result, he has not demonstrated that Oklahoma's procedural

bar is inadequate and his ground 2 claims of ineffective assistance of trial counsel are procedurally

barred.[3]

  This Court may not consider Petitioner's procedurally barred claims unless he is able to show

"cause and prejudice" for the default, or demonstrate that a fundamental miscarriage of justice would

result if his claims are not considered. See Coleman, 501 U.S. at 750; Demarest v. Price, 130 F.3d

922, 941-42 (10th Cir. 1997). The cause standard requires a petitioner to "show that some objective

factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."

Murray v. Carrier, 477 U.S. 478, 488 (1986). Examples of such external factors include the

discovery of new evidence, a change in the law, and interference by state officials. Id. As for

prejudice, a petitioner must show "'actual prejudice' resulting from the errors of which he

complains." United States v. Frady, 456 U.S. 152, 168 (1982). A "fundamental miscarriage of

justice" instead requires a petitioner to demonstrate that he is "actually innocent" of the crime of

which he was convicted. McCleskey v. Zant, 499 U.S. 467, 494 (1991).

  Petitioner attributes his failure to raise these claims on direct appeal to ineffective assistance

of appellate counsel (Dkt. # 1). It is well established that, in certain circumstances, counsel's

ineffectiveness can constitute "cause" sufficient to excuse a state prisoner's procedural default. See

Murray, 477 U.S. at 488-89. The ineffective assistance of appellate counsel claim itself must be

---

[3]  Even if Petitioner's claims of ineffective assistance of trial counsel are not procedurally
barred, they are without merit as determined in Part B(3) of this opinion.

presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.  Id. at 489; Edwards v. Carpenter, 529 U.S. 446, 453 (2000). In this case, Petitioner did raise a claim of ineffective assistance of appellate counsel on post-conviction appeal. However, this Court determined in Part B above that Petitioner's appellate counsel did not provide ineffective assistance in failing to raise the claims of ineffective assistance of trial counsel on direct appeal.  As a result, ineffective assistance of appellate counsel cannot serve as "cause" to overcome the procedural bar.

Petitioner may also overcome the procedural bar applicable to his defaulted claims under the fundamental miscarriage of justice exception. That exception to the procedural bar doctrine is applicable only when a petitioner asserts a claim of actual innocence.  Herrera v. Collins, 506 U.S. 390, 403-04 (1993); Sawyer v. Whitley, 505 U.S. 333, 339-41 (1992); see also Schlup v. Delo, 513 U.S. 298 (1995). To meet this test, a criminal defendant must make a colorable showing of factual innocence.  Beavers v. Saffle, 216 F.3d 918, 923 (10th Cir. 2000) (citing Herrera, 506 U.S. at 404). Under Schlup, a showing of innocence sufficient to allow consideration of procedurally barred claims must be "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error . . . ." Schlup, 513 U.S. at 316.  Petitioner has the burden of persuading this Court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Id. at 329. "The exception is intended for those rare situations 'where the State has convicted the wrong person of the crime. . . . [Or where] it is evident that the law has made a mistake.'" Klein v. Neal, 45 F.3d 1395, 1400 (10th Cir. 1995) (citation omitted). Petitioner does not claim that he is actually

innocent of the crimes for which he was convicted. Therefore, the fundamental miscarriage of justice exception is inapplicable in this case.

Accordingly, because Petitioner has not demonstrated "cause and prejudice" or that a "fundamental miscarriage of justice" will result if his claims are not considered, the Court concludes that it is procedurally barred from considering the merits of Petitioner's claims of ineffective assistance of trial counsel asserted in ground 2. <u>Coleman</u>, 510 U.S. at 724. He is not entitled to habeas corpus relief on those claims.

***CONCLUSION***

After carefully reviewing the record in this case, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, his petition for writ of habeas corpus should be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that the petition for writ of habeas corpus (Dkt. # 1) is **denied**.

**DATED** this 19th  day of November, 2009.



_____
TERENCE KERN
UNITED STATES DISTRICT JUDGE